STREICHER ET AL., APPELLANTS, *v.* MURRAY, RESPONDENT.

(No. 2,435.)

(Submitted October 9, 1907.   Decided October 25, 1907.)

[92 Pac. 36.]

*Equity—Deeds—Cancellation—Fraud—Trial—Motion for Judgment—Nonsuit—Findings—Review—Laches.*

Suits in Equity—Motion for Judgment—Inferences Drawn from Evidence—Findings—Review.

1.   Plaintiff, upon motion by defendant for judgment, made at the close of plaintiff's case in an equity suit, is not entitled—as he would be on a motion for nonsuit in an action at law—to have every inference drawn in his favor from the evidence which may reasonably be drawn therefrom; but the whole of the evidence is submitted to the court for final judgment, and if it furnishes ground for different inferences, the finding of the court thereon will not be disturbed unless the evidence preponderates against it.

Equity—Deeds—Cancellation—Fraud—Laches.

2.   Plaintiffs, in a suit to set aside a deed to mining property on the ground of fraud, were subjects of the German empire and resided there. In 1892 they executed and delivered, through a duly authorized agent, a deed to the property in question.   In 1894 they were informed that fraud had been practiced in the transaction, and commenced suit in 1897, which, however, was not brought to trial until 1906, plaintiffs' only excuse for the delay being that, as residents of a foreign country and ignorant of the English language and the institutions of this country, it was difficult for them to obtain the necessary facts to support their action.   The testimony of the principal witnesses, with the exception of one whose testimony could, however, have been readily supplied by others, was obtainable at any time.   *Held,* that plaintiffs' right to relief was barred by laches in prosecuting their suit.

Same—Laches in Prosecuting Action.

3.   One desiring to rescind a contract on the ground of fraud is not relieved of the imputation of laches by the mere bringing of his action promptly, if thereafter he neglects to prosecute it with diligence.

Same—Laches—Striking Competent Testimony—When Harmless.

4.   Where the district court correctly found that plaintiffs' cause of action in a suit for the cancellation of a deed to mining property, on the ground of fraud, was barred by laches, alleged error in striking out competent and material testimony which tended to support a charge of conspiracy to defraud, will not be considered.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

SUIT by Ludwig Streicher and others against James A. Murray.   From a judgment for defendant, plaintiffs appeal.   Affirmed.

*Mr. M. J. Cavanaugh, Mr. Chas. Mattison,* and *Mr. J. A. Poore,* for Appellants.

Where a person is accused of collusion, conspiracy or fraud, it is competent to show that he has presented the same scheme to others. (*People* v. *Arnold,* 46 Mich. 268, 9 N. W. 406; *Reinhold* v. *State,* 130 Ind. 467, 30 N. E. 306.)

The question of whether proof of conspiracy, collusion or fraud shall precede evidence of acts or declarations of the parties is a question merely of the order of proof, and is in the discretion of the court. (*People* v. *Daniels,* 105 Cal. 262, 38 Pac. 720; *People* v. *Rodley,* 131 Cal. 240, 63 Pac. 351; *People* v. *Fehrenbach,* 102 Cal. 394, 36 Pac. 678.) In order to make the declaration of one co-conspirator admissible against the other, it is not necessary that the conspiracy be established conclusively by other testimony. If such were the case it would be unnecessary to introduce any evidence of such acts or declarations, for the conspiracy would have already been proven without them. It is enough that there is some evidence of collusion, fraud or conspiracy. (*Doll* v. *Wooldredge,* 142 Mass. 161, 7 N. E. 832; *State* v. *Mushrush,* 97 Iowa, 444, 66 N. W. 746; *Pacific Live Stock Co.* v. *Gentry,* 38 Or. 275, 61 Pac. 422, 65 Pac. 597; *Phoenix Ins. Co.* v. *Moog,* 78 Ala. 284, 56 Am. Rep. 31; *Rea* v. *Missouri,* 17 Wall. (U. S.) 532, 21 L. Ed. 707.)

Where the incidents accompanying a transaction are inequitable, and show bad faith, such as concealment, misrepresentations, undue advantage, oppression, ignorance of facts, weakness of mind, sickness, old age, incapacity or the like, these circumstances, joined with inadequacy of price, or any of them, may easily induce the court to grant relief, defensive or affirmative. Such circumstances operate to throw a heavy burden of proof upon the party seeking to sustain the transaction, or claiming the benefits of it, to show that the other acted voluntarily, knowingly, intentionally and deliberately, with full knowledge of the nature and effect of his act, and that his consent was not obtained by any oppression, undue influence, or advantage taken of his condition, situation or necessities. If the defendant

should show perfect good faith in the transaction, it would be sustained. If he should fail in this, equity should grant such relief, affirmative or defensive, as might be appropriate. (2 Pomeroy's Equity Jurisprudence, p. 432, sec. 828, note; *Fish* v. *Lesser,* 69 Ill. 394; *Cathcart* v. *Robinson,* 5 Pet. (U. S.) 264, 8 L. Ed. 120; *Byers* v. *Surget,* 19 How. (U. S.) 303, 15 L. Ed. 670; *Malloy* v. *Berkin,* 11 Mont. 138, 27 Pac. 446.)

In every transaction between persons in a fiduciary capacity, equity raises the presumption against its validity, and casts upon the party acting in such relation the burden of proving affirmatively its compliance with the equitable requisites. (2 Pomeroy's Equity Jurisprudence, p. 478, sec. 956; see, also, *Savage* v. *Savage,* 12 Or. 459, 8 Pac. 754; *Ferguson* v. *Dent,* 24 Fed. 412; *Schoelkopf* v. *Leonard,* 8 Colo. 159, 6 Pac. 209; *Fry* v. *Platt,* 32 Kan. 62, 3 Pac. 781.)

An agent employed to make a sale must make full and fair disclosures of all facts within his knowledge as to the propriety of the sale, and where property has been transferred by an agent contrary to instructions or duty the principal may recover it from a third party. (Am. & Eng. Ency. of Law, 2d ed., p. 1172; *Warner* v. *Martin,* 11 How. (U. S.) 224, 13 L. Ed. 667; *Hill* v. *Colridge,* 33 Ark. 626; *Thatcher* v. *Kaucher,* 2 Colo. 698; *Barnard* v. *Campbell,* 55 N. Y. 456, 14 Am. Rep. 289; *Western Trans. Co.* v. *Marshal,* 37 Barb. 509; *McMahon* v. *Sloan,* 12 Pa. 229, 51 Am. Dec. 601; *Towle* v. *Leavitt,* 23 N. H. 360, 55 Am. Dec. 195; *Ingle* v. *Hartman,* 37 Iowa, 274; *Stoner* v. *Wiser,* 24 Iowa, 435; *Moseley* v. *Buck,* 3 Munf. (Va.) 232, 5 Am. Dec. 508; *Savage* v. *Savage,* 12 Or. 459, 8 Pac. 754; *City of Findley* v. *Pertz,* 66 Fed. 434, 13 C. C. A. 559, 29 L. R. A. 188; *Keith* v. *Kellam,* 35 Fed. 244; *Norris* v. *Tayloe et al.,* 39 Ill. 17.) Purchasers from an agent with knowledge of the facts stand in no better position than the agent himself, and hold as trustee for the principal. (*Louisville Bank* v. *Gray,* 84 Ky. 565, 2 S. W. 168; *Cumberland Coal Co.* v. *Sherman,* 30 Barb. (N. Y.) 553.) A third party dealing with an agent knowing at the same time that he was acting for the other party is a party

to the fraud for which he may be liable. (Clark & Skiles on Agency, p. 1199, sec. 553.) The principal's rights in such case depend upon the state of the transaction at the time he discovers the fraud and acts thereon. (Clark & Skiles on Agency, p. 1200.) If it is executed wholly or in part, and the rights cf innocent parties have not intervened, the principal may rescind the contract, and by restoring whatever he has received, recover back the right or property he had parted with under the contract, even though the agent does not act corruptly, or there is no actual intention to defraud the principal. (*Panama etc. Tel. Co.* v. *Indian Rubber G. P. & Tel. Co.*, 10 Ch. App. 515; *City of Findlay* v. *Pertz*, 66 Fed. 427, 13 C. C. A. 559, 29 L. R. A. 188; *Miller* v. *Louisville M. Ry. Co.*, 83 Ala. 274, 3 Am. St. Rep. 722; *Norris* v. *Taylor*, 49 Ill. 17, 95 Am. Dec. 568; *Eldridge* v. *Walker*, 60 Ill. 230; *Hegenmyer* v. *Marks*, 37 Minn. 6, 5 Am. St. Rep. 808, 32 N. W. 785; *Gardner* v. *Ogden*, 22 N. Y. 327, 78 Am. Dec. 192; *Green* v. *Haskell*, 5 R. I. 447; *Fish* v. *Lesser*, 69 Ill. 394.)

It was not necessary to offer to return to the defendant the $8,000 received by plaintiffs on sale, or any other sum. Where the purchaser is alleged to have in his hands more than sufficient money of the plaintiffs to reimburse him for the purchase price, and an accounting is asked, this is a sufficient offer to rescind. (*Watts* v. *White*, 13 Cal. 324; *Maloy* v. *Berkin*, 11 Mont. 138, 27 Pac. 442.)

The burden of proving plaintiff's knowledge of the facts giving rise to his right of relief, and of proving the time when he acquired this knowledge so as to show acquiescence is upon the defendant. (*Baker* v. *Lever*, 67 N. Y. 304, 23 Am. Rep. 117; *Baker* v. *Spencer*, 47 N. Y. 562; *Engeman* v. *Taylor*, 46 W. V. 669, 33 S. E. 922.)

The general doctrine of laches is not applicable in this action. (See *Nud* v. *Powers*, 136 Mass. 273; *Mott* v. *Mares* (Tex. Civ. App.), 29 S. W. 825; *Hamilton* v. *Dooley*, 15 Utah, 280, 49 Pac. 769; *Townsend* v. *Vanderwerker*, 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383; *Richardson* v. *Green*, 61 Fed. 432, 9

C. C. A. 565; *Lux* v. *Haggin,* 69 Cal. 255, 10 Pac. 674; *Ridgley* v. *Tacoma Light Co.,* 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425.) Where the delay is not sufficient to bar the legal remedy, equity should not bar the remedy for laches, except there has been great prejudice to the defendant. (*McDermott* v. *Anaheim Water Co.,* 124 Cal. 112, 56 Pac. 779; *First National Bank* v. *Nelson,* 106 Ala. 535, 18 South. 154.)

*Mr. J. E. Murray,* and *Mr. J. L. Wines,* for Respondent.

Actual, as distinguished from constructive, fraud is the character of fraud relied upon in this case; no act is shown to have been committed by defendant with any intent to defraud. No fraud, false representation, concealment, or conspiracy are alleged as against defendant. The allegation of fraud is a mere legal conclusion and wholly insufficient to put the court upon inquiry as to its effect if it had been properly pleaded. (*Savage* v. *Burns,* 3 Mont. 27; *Misner* v. *Knapp,* 13 Or. 135, 57 Am. Rep. 6, 9 Pac. 65; *Kent* v. *Snyder,* 30 Cal. 667; *Semple* v. *Hager,* 27 Cal. 163; *Feeney* v. *Howard,* 79 Cal. 525, 12 Am. St. Rep. 162, 21 Pac. 984, 4 L. R. A. 826.) The complaint must show that plaintiffs were misled by something that was done by defendant or his grantor. (*Nicolai* v. *Lyon,* 8 Or. 56.) A party selling real property is conclusively presumed to know the state of his own title. The attorney in fact of plaintiffs, also, in this case, is conclusively presumed to know the state of the title. (*Robins* v. *Hope,* 57 Cal. 493.)

The complaint must show that the attorney in fact executing the deed was induced by, and relied upon, statements made by the purchaser, and that such statements were false, and that they were made for the purpose of inducing such sale, and with that intent, and that they were known to be false; and it must also be shown that the agent believed the representations to be true and acted upon the faith of the same. (*Taylor* v. *Guest,* 58 N. Y. 262-266; *Meyer* v. *Amidon,* 45 N. Y. 169; *Oberlander* v. *Spiess,* 45 N. Y. 175-177.) The circumstances of the discovery of facts and conditions must be fully stated and proved,

and the delay which has occurred must be shown to be consistent with reasonable diligence. (*Wood* v. *Carpenter*, 101 U. S. 135, 140, 25 L. Ed. 807; *Hardt* v. *Heidweyer*, 152 U. S. 547, 14 Sup. Ct. 671, 38 L. Ed. 548; *Badger* v. *Badger*, 2 Wall. 87, 17 L. Ed. 836; *Robertson* v. *Burrel*, 110 Cal. 568, 42 Pac. 1086; *Lakin* v. *Sierra Butte M. Co.*, 25 Fed. 337; *Bratt* v. *Cal. M. Co.*, 9 Saw. 354, 24 Fed. 869; *Hagerman* v. *Bates*, 24 Colo. 71, 49 Pac. 139; *Woodmanse Mfg. Co.* v. *Williams*, 68 Fed. 489, 15 C. C. A. 520; *Murphy* v. *DeFrance*, 105 Mo. 53, 15 S. W. 949, 16 S. W. 861; *Godden* v. *Kimmell*, 99 U. S. 201, 25 L. Ed. 431.)

In this case, the complaint fails to show any excuse for not instituting this action prior to the time when five years had elapsed after the preparation of the alleged fraud and the execution of the deed in question. (*Hammond* v. *Wallace*, 85 Cal. 522, 20 Am. St. Rep. 239, 24 Pac. 837; *Burkle* v. *Levy*, 70 Cal. 250, 11 Pac. 643; *Williams* v. *Mitchell*, 87 Cal. 532, 26 Pac. 632; *Credit Company* v. *A. C. R. Co.*, 15 Fed. 46, 5 McCrary, 23; *Cotter* v. *Butte & Ruby Valley Co.*, 31 Mont. 134, 77 Pac. 509.)

To invalidate a sale tangible facts must be proven from which a legitimate inference of a fraudulent intent can be drawn. It is not enough to create a suspicion of a wrong, nor should the court be required to guess at the truth. (*Jaeger* v. *Kelly*, 52 N. Y. 274.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by certain of the plaintiffs to obtain a decree setting aside a conveyance made by them and others to the defendant, through his agent, Silas F. King, of interests in mining claims described in the complaint and situate in Silver Bow county, and requiring the defendant to account for ores extracted therefrom since the conveyance was made. Recovery is also sought of certain moneys, which, it is alleged, belong to plaintiffs, but which the defendant, having wrongfully obtained, has converted to his own use. Others of the plaintiffs who joined in the execution of the deed having brought another ac-

tion demanding the same relief on the same grounds, the two causes were consolidated and tried as one.

The allegations upon which relief is demanded are set forth in plaintiffs' pleadings with much prolixity and repetition. The substance of them is the following: That plaintiffs are all subjects of the German Empire and reside there; that one John Streicher died intestate in Silver Bow county in 1882, and plaintiffs, his heirs at law, having inherited the property in controversy as tenants in common, were the owners of it until about August 1, 1892; that they knew nothing of its value or condition beyond the fact that it consisted of patented mining claims, and that they were tenants in common with others who had undivided interests therein, living in Silver Bow county; that upon the death of said Streicher they appointed one Adolph Rosenthal, acting consul for the German Empire at San Francisco, California, their agent and attorney to take charge of the property and manage it for them, and that he accepted the trust; that said Rosenthal thereupon employed one William Lowey, an attorney at law at San Francisco, to protect the interests of the plaintiffs; that he acted as the attorney of Rosenthal in this capacity until 1891, when he became associated with one Gutsch, whereupon and afterward the firm of Lowey & Gutsch assumed charge of the property; that soon after his employment the said Lowey secured the services of one Caleb Irvine, residing at Butte, to lease the property and collect accruing royalties and rents for the benefit of the plaintiffs; that upon the death of Irvine, in 1891, Lowey & Gutsch employed one Gustav A. Kornberg, a resident of Butte, to act as their agent to lease the property, to collect rents and royalties for the use and benefit of the plaintiffs, and also to secure a purchaser therefor; that at that time Lowey & Gutsch knew that plaintiffs' title was perfect, and that the property was very valuable and was yielding large dividends in royalties; that Lowey & Gutsch and Kornberg thereupon entered into a conspiracy to defraud the plaintiffs by procuring a purchaser from Rosenthal, plaintiff's agent at a grossly inadequate price; that

Kornberg was at that time, and for a long time prior thereto had been, the trusted agent of the defendant in mining business in Silver Bow county and an intimate, confidential friend; that the defendant joined the conspiracy, at the instance of Kornberg, to cheat and defraud the plaintiffs; that Kornberg, at the instance and request of defendant, went to San Francisco during the winter of 1891, at the expense of defendant, to bring about the sale through the aid of Gutsch; that defendant and Kornberg then knew from a personal examination of the property that one of the claims in particular (the Elba) was paying large dividends and contained a large amount of merchantable ore; that between the time of the death of Irvine in 1891, and August, 1892, there had been deposited by leasers of the Elba claim, in the banking-house of W. A. Clark & Bro., at Butte, for the use and benefit of the plaintiffs, in the way of royalties, the sum of $2,000, the stipulated rate paid by the leasers being twenty-five per cent of the ores extracted; that the defendant and Kornberg both well knew that the interests in the various claims held and owned by the plaintiffs had a value of $100,000, and that the Elba claim had yielded during the preceding year a profit of more than $10,000; that they also well knew that the plaintiffs were all foreigners, living in Germany, and were ignorant of the laws and language of the people in Montana, and had no means of learning or knowing the condition or value of their property, except through such information as might be given them by their agent Rosenthal. and that he had no means of knowledge except through the agency of Lowey & Gutsch, Kornberg, and the defendant; that, in pursuance of their conspiracy, the defendant, Kornberg and Gutsch concealed from the plaintiffs, and their agent, Rosenthal, the condition and value of the property—not only so, but that Kornberg, at the instance of the defendant and through Gutsch, represented to Rosenthal that plaintiff's title was questionable, that the property was of little value, that Kornberg had repeatedly offered it for sale, but had found no purchasers, that other persons were in possession, that it was located a

thousand miles from San Francisco, in Montana, where titles were insecure, and that he had a purchaser, but one who would not buy if the sale was not quickly consummated; that all these representations were false, were made by Kornberg intentionally with the purpose of inducing the plaintiffs and their agent, Rosenthal, to act upon them and part with title for a grossly inadequate price; that during the negotiations Kornberg pretended to act for the plaintiffs and their agent, Rosenthal, but was in fact acting for the defendant; that this fact was not known to plaintiffs or Rosenthal until after the deed had been executed conveying the property and also the money deposited with W. A. Clark & Bro.; that plaintiffs and their agent, Rosenthal, having no knowledge of the value of their property, believed and relied upon these representations of Kornberg and Gutsch; that otherwise the plaintiffs would not have parted with their title; that they had no knowledge of the deposit of money with W. A. Clark & Bro., because the fact was concealed from them by Kornberg and Gutsch; that one Silas F. King was the ostensible purchaser, but that the defendant was in fact the real purchaser, said Kornberg acting simply as his agent; that the deed executed by Rosenthal in plaintiffs' behalf was prepared in Butte, Montana, at the instance of the defendant; that it, in terms, conveyed all the property, including all moneys belonging to plaintiffs or claims in their favor in Silver Bow county, for a consideration of $8,000; that it was sent to San Francisco for execution by Rosenthal, and was then put in escrow for delivery to King upon payment of said sum of $8,000 within ninety days thereafter; that Gutsch had then written to plaintiffs making the false representations heretofore enumerated, adding to them a false statement that the mining property was in the possession of other persons, from whom it would be difficult to recover it, and that they would do well to get what they could out of it by making the sale to King; that, acting upon these representations, the deed was executed by Rosenthal and put in escrow in the name of King, but in fact for the defendant, and that thereafter the defendant paid the sum

of $8,000, receiving the deed; that defendant thereupon had King deed the property to him and collected the money from W. A. Clark & Bro., and now, being in possession and control of the property, claims to be the exclusive owner of it; that upon presenting the deed to Rosenthal for execution, Gutsch would not allow him time to communicate with plaintiffs, but induced him to execute it at once, upon the false representation, which Rosenthal believed, that he must act at once or lose the opportunity to sell; that Kornberg received from the plaintiffs a commission of $500 for his services in selling the property, and at the same time received $5,000 from the defendant-for negotiating the sale; that since August, 1892, the defendant, being unlawfully in possession of the property, has extracted ore therefrom of the value of $250,000 and converted the same to his own use; that the first information the plaintiffs had after the execution of the deed that the representations made to them and their agent were false, and that they had been defrauded thereby, was in the latter part of the year 1894; that as soon as they could thereafter ascertain the facts this action was instituted, and that their delay in bringing the action was due to the distance of their residence from the state of Montana, the difficulty of ascertaining the facts by correspondence, and their ignorance of American institutions and the English language.

The complaint contains no allegation that the plaintiffs offered to rescind the sale prior to bringing suit; the allegation on this subject being that the plaintiffs are willing that the defendant shall retain out of the amount of money found to be due them from him for ores extracted by him and the moneys received by him, the amount paid to the plaintiffs as a consideration for the deed. It is demanded that the conveyance be adjudged to be fraudulent, that it be canceled of record, that plaintiffs be declared to be the owners of the property and the money held by Clark & Bro. at the time of the delivery of the deed, that the amount of ore extracted since 1892 be ascertained, and that plaintiffs have judgment for such amount and for the

amount of money taken from the bank of W. A. Clark & Bro., with legal interest on both sums, and for general relief.

The answer of the defendant admits that he paid to Rosenthal, the agent of plaintiffs, the sum of $8,000, the consideration agreed to be paid for the property, that thereupon King received the deed; that thereafter King conveyed the property to him, that defendant has since been in the possession of it, and that he has received therefrom in royalties the sum of $11,000, but no more. He denies generally and specifically all the other allegations of the complaint. Among other matters pleaded as affirmative defenses, the defendant relies upon the laches of plaintiffs and the statutes of limitation.

The trial was had by the court sitting without a jury. At the close of plaintiffs' case, the testimony of two witnesses, Schmidt and Kosanko, was, on motion of defendant, stricken from the record as incompetent. Thereupon the defendant moved for judgment, specifying the particulars in which the evidence failed to support the allegations of conspiracy, fraud, and inadequacy of consideration, and alleging that it showed inexcusable laches on the part of plaintiffs in seeking a rescission of the sale. This motion was granted, and judgment entered for the defendant for costs. The plaintiffs have appealed from the judgment and an order denying a new trial.

It is argued that the court erred in striking out the testimony of witnesses Schmidt and Kosanko, and in sustaining defendant's motion for judgment. We shall discuss these contentions in a reverse order from that pursued in appellants' brief.

The motion for judgment is designated by counsel as a motion for nonsuit. It is argued that, if there is any evidence in the record justifying an inference of fraud and conspiracy on the part of defendant with Kornberg and Gutsch, the court was not justified in rendering judgment for defendant. In an equity case, however, there can be no such thing, technically, as a nonsuit. (*Sanford* v. *Gates, Townsend & Co.,* 21 Mont. 277, 53 Pac. 749; *Short* v. *Estey,* 33 Mont. 261, 83 Pac. 479; *Morrison* v. *Jones,* 31 Mont. 154, 77 Pac. 507.) Upon motion

for judgment the plaintiff is not entitled, as in a suit at law,. to have every inference drawn from the evidence which may reasonably be drawn therefrom in his favor. The whole of the evidence is submitted to the court for final judgment, and if it furnishes ground for different inferences the finding of the court thereon will not be disturbed, unless, as in a case where evidence has been introduced by the defendant also, it preponderates against the finding. (*Bordeaux* v. *Bordeaux*, 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918.)

The evidence submitted in this record is in some respects extremely vague and unsatisfactory, and in others conflicting. The case presented, therefore, is not one upon the facts from which the court was left to determine solely whether or not there was an inference favorable to plaintiffs, but rather one upon which it was left to find from conflicting evidence whether the allegations of the complaint were sustained.

After an examination of the somewhat voluminous record,. we are of the opinion that the judgment and order should be affirmed. There is no substantial evidence of any wrongdoing on the part of the defendant Murray, even though it be conceded that Kornberg betrayed his trust. It appears that, ever after the plaintiffs inherited the property from John Streicher, they had been anxious to sell it. Prior to the time Kornberg effected a sale of it, they had authorized an offer of it to be made for $7,000. They knew that all the claims but one, the Elba, had not been developed, and that even that, under the management. of their agent Irvine, had yielded them no royalties, and they had stated to their agent that they preferred to sell it and get what they could out of it. Indeed, they had supposed,— which was the fact prior to 1891,—that the property had little apparent value. They had also complained that Rosenthal, their agent, and Lowey & Gutsch, had been negligent in failing to secure a purchaser. It seems that some royalties had been. paid by leasers to Irvine, but that he had failed to account. for them. In 1891, when Irvine died, Rosenthal and Gutsch,.

Lowey being then absent in Europe, made inquiry of a number of persons in Butte for some suitable person to act as agent to sell the property as soon as might be. Kornberg having been recommended to them, they secured his services for that purpose. He was authorized to sell, and the price was fixed at $7,000 net, he to receive as his commission one-half of what he could get above that amount. In case he failed to obtain more than $7,000, he was to receive no commission. Leasers were then at work on the Elba claim, and were taking out some ore. After having offered the property to different persons who were regarded as available purchasers, and having failed to find a purchaser, he offered it to defendant, first for $20,000, then for $15,000, and finally for $8,000. The defendant at first declined to purchase at all, but later, after examination of it, accepted the offer. The deed was then executed to King at the defendant's request by Rosenthal, and deposited in a bank in San Francisco, to be delivered within ninety days upon payment of $8,000. This was in April, 1892. It contained a provision setting over to the purchaser all moneys due to the plaintiffs for royalties. After Irvine's death, and prior to the appointment of Kornberg, the royalties due from leasers had been deposited in the bank of W. A. Clark & Bro., at Butte, but at whose direction it does not appear. Kornberg, under the terms of his employment, seems to have had no control of these, nor was he under any obligation to see that they were paid over to the plaintiffs. They continued to accumulate until the purchase price was paid and the deed delivered. This occurred on July 22, 1892. The accumulated royalties then amounted to about $2,200. Kornberg knew that some amount of money belonging to the heirs was on deposit at the time the deed was executed, but the exact amount he did not know, because information had been denied him at the bank. This knowledge he communicated to Murray. Whether he communicated definite knowledge on this point to Lowey & Gutsch does not appear. He had no communication with Rosenthal, so far as the record shows. The latter seems to have thought the amount of these royalties,

if there was any amount, was trifling. There is no evidence, however, that he had definite knowledge on the subject. There is no evidence that Murray knew, or had reason to think, that Kornberg concealed any material fact from Lowey & Gutsch, or that he made any misrepresentations to them or the plaintiffs.

The deed from plaintiffs to King is not in the record, and it is impossible to tell therefore what its contents are. Nor does the evidence contain any explanation or reason why the clause was inserted in it, providing that Murray should have the royalties due to plaintiffs at the time the deed was delivered. There is a suggestion, however, that they were set over to Murray for the purpose of being paid out to two or three other of the heirs of Streicher living in the United States, who had not joined in the deed with plaintiffs. In any event, the evidence is clear that at least $1,000 of the amount was paid out to secure one interest. So far as appears, it may have been understood between Murray and Kornberg, the agent of plaintiffs, that, since most of these royalties had accumulated after the deed had been put in escrow in San Francisco, they should belong to Murray.

It is not entirely clear from the evidence, either, that the consideration agreed to be paid and finally paid by Murray, was grossly inadequate, if the value of the property at the time the agreement was made be taken into consideration; for, while there is some vague evidence tending to show that the interest of plaintiffs might at that time have been worth $20,000, it is clear that it was not so regarded generally by mining people who lived at Butte and whose attention was called to it. None of the claims, except the Elba, were developed so as to be producing mines. The Elba had never produced any large amount up to that time. At least, the evidence fails to show that it had. Apparently it was just beginning to produce, and, as it turned out, after the contract was made and the deed delivered, it produced rapidly for a few months, and then ceased to be worked, and has not been worked since.

In saying what we have said so far, we have not taken into consideration the delay of the plaintiffs in bringing this

action, and their lack of diligence in prosecuting it. The deed was put in escrow in April, 1892. It was delivered on July 22, 1892. The evidence shows that the plaintiffs were informed in 1894, by correspondence with persons in Butte, that there were suspicious circumstances connected with the transaction,— in other words, that they had been defrauded. The action was brought on April 27, 1897. It was then allowed to sleep, apparently, until it was finally brought to trial on August 6, 1906, more than nine years afterward. Assuming that there is sufficient excuse for not bringing the action earlier, for that the plaintiffs were ignorant of the language and institutions of this country, that they resided in Germany, and that it was difficult to obtain the facts necessary to support the action, what shall we say of the unexplained delay of more than nine years after it was brought?

One desiring to rescind a contract on the ground of fraud or for any other reason must act promptly. (Civ. Code, sec. 2273.) If he must bring an action to compel a rescission, he must bring it promptly, and, not only that, but he must prosecute it with diligence. The mere bringing of an action does not relieve a person from the imputation of laches. The lack of diligence in prosecuting it after it is brought leads to the same consequences as delay in bringing it. Witnesses die or disappear, or the facts fade from memory. The positions of the parties change, or the subject of the controversy fluctuates in value. The right sought to be enforced becomes doubtful or uncertain, or it becomes impossible for the court to administer equity between the parties with any degree of certainty. In all such cases the court will, in its discretion, refuse to entertain the action and leave the parties as they are. (*Johnston* v. *Standard Min. Co.*, 148 U. S. 360, 13 Sup. Ct. 585, 37 L. Ed. 480; *Willard* v. *Wood*, 164 U. S. 502, 17 Sup. Ct. 176, 41 L. Ed. 531; 18 Am. & Eng. Ency. of Law, 2d ed., 110, and collection of cases in note.)

Each case must rest upon its own facts, but we think the excuse offered for the delay in bringing the action, and then al-

lowing it to rest without prosecution for more than nine years, is not justified by the reasons assigned either in the pleadings or in the evidence. Indeed, the evidence fails to offer any substantial reason why the trial was not had sooner. It is scarcely possible to conceive that it was necessary to occupy more than nine years in gathering the facts upon which the plaintiffs have sought to sustain their claim.

The main volume of the evidence presented consisted of the testimony of the defendant, Kornberg, Gutsch, and Rosenthal. The principal witness, other than these, was one Sinsel, who was engaged in working the Elba claim at the time the sale was made. The testimony of all of these witnesses, except that of Sinsel, could have been had at any time. The testimony given by Sinsel could have been supplied largely, doubtless, by many witnesses who were living in Butte, for it went almost entirely to the value of the Elba claim. At any rate, it is scarcely possible to conceive that a person making diligent inquiry could not have ascertained his whereabouts in less time than nine years.

Viewing the evidence as a whole, without analyzing it further, we are of the opinion that it does not preponderate against the finding of the court, so as to justify this court in reversing the judgment and directing a new trial. Even if it would otherwise justify the granting of the relief sought, we think the district court was justified in denying the relief on the ground of laches.

The conclusion having been reached that the laches of plaintiffs precludes a recovery in any event, it is not necessary to consider the question whether the court erred in striking out the testimony of Schmidt and Kosanko, for, though it is competent and material, as tending to support the theory of a conspiracy, and might have led to a different conclusion upon the evidence, the same result should have been reached.

Let the judgment and order be affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.