OPINION
 

 By the Court,
 

 Shearing, J.:
 

 Blackjack Bonding and co-appellants (hereinafter collectively
 
 *1216
 
 known as “Blackjack”) appeal from a district court order dismissing their complaint, which sought to recoup $185,960.00 in bail bond filing fees paid between 1991 and May 12, 1997, to the Las Vegas Municipal Court. We affirm the district court’s order dismissing the complaint. The municipal court possessed the power to assess such fees pursuant to its inherent judicial powers.
 

 FACTS
 

 Beginning in 1991, the Las Vegas Municipal Court started assessing a $40.00 filing fee for bail bonds. On April 10, 1995, the Office of the Attorney General issued an opinion stating that municipal courts could not assess property or bail bond fees because such courts were created under statutory authority; therefore, absent statutory authorization, municipal courts lacked the authority or power to collect fees. 95-05 Op. Att’y Gen. 23, 24 (1995).
 

 From 1991 to 1997, NRS 5.073 (now NRS 5.073(1)) read, in pertinent part:
 

 The practice and proceedings in the municipal court must conform, as nearly as practicable, to the practice and proceedings of justices’ courts in similar cases. . . . The municipal court must be treated and considered as a justice’s court whenever the proceedings thereof are called into question.
 

 From 1991 to 1997, NRS 266.550 (now NRS 266.550(1)) read, in pertinent part: “The municipal court shall have such powers and jurisdiction in the city as are now provided by law for justices’ courts.”
 

 In response to the Attorney General’s 95-05 opinion, the Nevada Legislature added section 2 to NRS 266.550, which provides: “The powers of the municipal court include the power to charge and collect those fees authorized pursuant to NRS 5.073.” In addition, the Nevada Legislature added section 2 to NRS 5.073, which provides: “Each municipal judge shall charge and collect such fees prescribed in NRS 4.060 that are within the jurisdictional limits of the municipal court.’ ’ Both of these amendments became effective May 12, 1997.
 
 [1]
 

 On April 24, 1998, Blackjack filed a complaint claiming that between 1991 and May 12, 1997, the Las Vegas Municipal Court had improperly charged fees for bail bonds because it lacked the authority to assess fees. It also requested that the $185,960.00 collected from appellants in filing fees for bail bonds over that period be returned. The City of Las Vegas and the Las Vegas
 
 *1217
 
 Municipal Court filed a motion to dismiss for failure to state a claim upon which relief may be granted, arguing that the municipal court had the inherent power to charge and collect fees. The district court granted the City’s motion, holding that municipal courts had a specific grant of authority to collect fees prior to 1997 pursuant to NRS 5.073 and NRS 4.060. This timely appeal followed.
 

 DISCUSSION
 

 As a threshold matter, we must determine whether the district court’s dismissal of Blackjack’s claim should be reviewed as an order granting an NRCP 12(b)(5) motion to dismiss or as an order granting an NRCP 12(c) motion for summary judgment. We conclude the district court’s order should be reviewed as a motion to dismiss. Although documents outside the pleadings were presented to the district court, the district court did not rely on these documents in its ruling.
 

 An order granting an NRCP 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted faces a rigorous standard of review on appeal, as this court must construe the pleadings liberally and accept all factual allegations in the complaint as true.
 
 See
 
 Simpson v. Mars Inc., 113 Nev. 188, 190, 929 P.2d 966, 967 (1997). Furthermore, this court must draw every fair inference in favor of the non-moving party.
 
 Id.
 
 ‘ A complaint will not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts which, if accepted by the trier of fact, would entitle him or her to relief.”
 
 Id.
 

 Blackjack argues that because municipal courts had no specific statutory authorization to collect fees prior to May 12, 1997, the filing fees for bail bonds collected by the Las Vegas Municipal Court between 1991 and May 12, 1997, were ultra vires and constituted unjust enrichment. Blackjack contends that because municipal courts are created by statute instead of being mandated by the Nevada Constitution, municipal courts only have powers given to them by statute. The district court dismissed Blackjack’s claim, determining that “there was a specific grant of authority for Las Vegas Municipal Court to charge a filing fee for bail bonds prior to 1997 under NRS 5.073 and 4.060.”
 

 Whether municipal courts have the power to collect fees independent of specific statutory authorization is an issue of first impression. We conclude that a municipal court possesses the authority to collect reasonable fees pursuant to its inherent judicial powers. Blackjack’s arguments that fee collection by the Las
 
 *1218
 
 Vegas Municipal Court was ultra vires and constituted unjust enrichment fail because Blackjack’s underlying premise thát municipal courts only have powers given to them by statute is incorrect.-
 

 In advancing its argument, Blackjack mistakenly relies on an opinion of the Nevada Attorney General that concluded that municipal courts are not empowered by the Nevada Constitution or statutory authority to collect filing fees for bail or property bonds because municipal courts lack jurisdiction to collect such fees.
 
 [2]
 

 See
 
 95-05 Op. Att’y Gen. 23, 24 (1995). Opinions of the Attorney General are not binding legal authority or precedent.
 
 See
 
 Goldman v. Bryan, 106 Nev. 30, 42, 787 P.2d 372, 380 (1990). We reject Blackjack’s argument. The Attorney General’s opinion confuses jurisdiction, which is subject to legislative control, with independent, inherent judicial powers, which are not subject to legislative control.
 

 Inherent judicial powers stem from two sources: the separation of powers doctrine and the power inherent in a court by virtue of its sheer existence.
 
 See
 
 Felix F. Stumpf,
 
 Inherent Powers of the Courts: Sword and Shield of the Judiciary
 
 6 (The National Judicial College 1994). Under the separation of powers doctrine, each branch of government is considered to be co-equal, with inherent powers to administer its own affairs.
 
 See
 
 State v. Dist. Ct., 116 Nev. 953, 11 P.3d 1209 (2000) (citing Goldberg v. District Court, 93 Nev. 614, 615-17, 572 P.2d 521, 522 (1977));
 
 see also
 
 City of No. Las Vegas v. Daines, 92 Nev. 292, 294, 550 P.2d 399, 400 (1976). Without inherent powers to perform its duties, the judiciary would become a subordinate branch of government, which is contrary to the central tenet of separation of powers.
 
 See
 
 William Scott Ferguson, Note,
 
 Judicial Financial Autonomy and Inherent Power,
 
 57 Cornell L. Rev. 975, 986 (1972).
 

 The power inherent in a court by virtue of its sheer existence is broader and more fundamental than the inherent power conferred by separation of powers.
 
 See
 
 Stumpf,
 
 supra,
 
 at 8;
 
 accord
 
 Barland v. Eau Claire County, 575 N.W.2d 691, 693 (Wis. 1998). It is impossible to give an all-inclusive enumeration of inherent judicial powers.
 
 See
 
 Farmer v. Administrative Dir. of the Court,
 
 *1219
 
 11 P.3d 457, 466 (Haw. 2000) (citing State v. Moriwake, 647 P.2d 705, 711-12 (Haw. 1982));
 
 accord Barland,
 
 575 N.W.2d at 698. Nonetheless, when a constitution or statute gives a general power, it also grants by implication every particular power necessary for the exercise of that power.
 
 See
 
 Stumpf,
 
 supra,
 
 at 8;
 
 see also
 
 Roger A. Silver,
 
 The Inherent Power of the Florida Courts,
 
 39 U. Miami L. Rev. 257, 289 (1985); State v. Mitchell, 672 P.2d 1, 8 (Kan. 1983).
 

 We conclude that both sources of inherent judicial power authorized the municipal court’s collection of fees in the instant case.
 

 Ours is a government of separation of powers.
 
 See
 
 Nev. Const. art. 3, § 1.
 
 [3]
 
 It is fundamental to such a system of government that powers separately vested in the executive, legislative, and judicial departments be exercised without intrusion.
 
 See Goldberg,
 
 93 Nev. at 615, 572 P.2d at 522;
 
 see also Daines,
 
 92 Nev. at 294, 550 P.2d at 400. The Nevada Constitution expressly vests judicial power in the courts:
 

 The Judicial power of this State shall be vested in a court system, comprising a Supreme Court, District Courts, and Justices of the Peace. The Legislature may also establish, as part of the system, Courts for municipal purposes only in incorporated cities and towns.
 

 Nev. Const. art. 6, § 1.
 

 In addition to vesting judicial power in the courts, Article 6, section 1, of the Nevada Constitution distinguishes municipal courts as being statutorily, rather than constitutionally, created. Nonetheless, this court has declared that municipal courts, once established, are part of the constitutional judicial system of Nevada, and “enjoy the inherent powers of all constitutionally created courts, and are entitled to manage internal affairs without interference from separate governmental branches.” Nunez v. City of North Las Vegas, 116 Nev. 535, 540, 1 P.3d 959, 962 (2000);
 
 see also Daines,
 
 92 Nev. at 294, 550 P.2d at 400;
 
 accord
 
 City of Milwaukee v. Wroten, 466 N.W.2d 861, 867 (Wis. 1991); cf.
 
 *1220
 
 Evan Caminker,
 
 Allocating the Judicial Power in a “Unified Judiciary,”
 
 78 Tex. L. Rev. 1513, 1517-18 (2000) (noting that because Article III of the U.S. Constitution vests judicial power in the federal courts, Congress has control over the “when and where” of judicial power, i.e., the number and jurisdiction of federal courts, but not over the “who and what” of judicial power, i.e., who has the power and what that power consists of). Thus, we conclude that municipal courts in this state enjoy inherent judicial powers under the separation of powers doctrine.
 

 The Nevada Constitution further states:
 

 Provision shall be made by law prescribing the powers[,] duties and responsibilities of any Municipal Court that may be established in pursuance of Section One, of this Article; and also fixing by law the jurisdiction of said Court so as not to conflict with that of the several courts of Record.
 

 Nev. Const. art. 6, § 9.
 

 Article 6, section 9, gives the Legislature the authority to define the jurisdiction of municipal courts. Under NRS 5.050(3)(c), the Legislature gave the municipal courts subject matter jurisdiction over bail and property bonds. We conclude that in giving municipal courts general jurisdictional power over bail and property bonds, the Legislature also granted by implication every power necessary for municipal courts to exercise that power, including the power to charge and collect reasonable filing fees.
 
 [4]
 
 To conclude otherwise would render the municipal courts ineffectual.
 

 A mere naked power is useless and meaningless. The power must be exercised and it must function to be meaningful ... . Judicial function includes the right to exercise any
 
 *1221
 
 lesser power that can be subsumed under, or is included as an integral part of, the broader heading of “Judicial Power”; that is, any power or authority that is inherent or incidental to a judicial function is properly within the realm of judicial power. . . .
 

 In addition to the constitutionally expressed powers and functions of each Department, (the Legislative, the Executive, and the Judicial) each possesses inherent and incidental powers that are properly termed ministerial. Ministerial functions are methods of implementation to accomplish or put into effect the basic function of each Department. No Department could properly function without the inherent ministerial functions. Without the inherent powers of ministerial functions each Department would exist in a vacuum. It would be literally helpless.
 

 State v. Dist. Ct., 116 Nev. 953, 962, 11 P.3d 1209, 1214 (2000) (quoting Galloway v. Truesdell, 83 Nev. 13, 20-21, 422 P.2d 237, 242-43 (1967)) (emphasis omitted).
 

 Blackjack relies on Camacho v. Samaniego, 831 S.W.2d 804 (Tex. 1992), and Hogoboom v. Superior Court, 59 Cal. Rptr. 2d 254 (Ct. App. 1996), to argue that municipal courts may not collect fees absent statutory authority. We disagree because both of these cases are distinguishable on the facts from the case at bar.
 

 Camacho
 
 addresses whether a commissioner’s court had the authority to impose a bail bond fee collected by a sheriff to help defray the sheriffs administrative costs. 831 S.W.2d at 811, 815. These facts are distinguishable from the case at bar because the fees imposed by the commissioner’s court did not pertain to internal, judicial department business. Therefore, the fees in
 
 Camacho
 
 would not fall under a court’s inherent judicial powers. In fact, inherent judicial powers are not even discussed in
 
 Camacho.
 

 Hogoboom
 
 addresses whether the imposition of a filing fee by a local court was preempted by a schedule of court fees promulgated by the Legislature. 59 Cal. Rptr. 2d at 265. This case offers no support to Blackjack’s argument. In discussing the history of the statutory fee schedule, the
 
 Hogoboom
 
 court acknowledged that every court in California has the inherent power to make its own rules, provided these rules are not inconsistent with the laws of the state or the Judicial Council.
 
 Id.
 
 at 259. It was not until 1872 that the California Legislature prohibited courts from using their rule-making power to charge fees.
 
 Id.
 
 at 260. The legislature imposed this restriction to make court fees uniform.
 
 Id.
 

 We conclude that
 
 Hogoboom
 
 is distinguishable from the case at bar for two reasons: (1) the case at bar does not involve a preemption challenge; and (2) Nevada, unlike California, has no statute that expressly forbids a court from charging a fee.
 
 *1222
 
 Furthermore, we conclude that
 
 Hogoboom
 
 bolsters the City’s argument that the courts have inherent powers to charge and collect fees.
 
 Id.
 
 at 260.
 
 Hogoboom
 
 implies that prior to 1872, California courts had inherent judicial powers to impose fees and that the judiciary acquiesced to the Legislature’s determination to establish a statewide, statutory fee schedule to promote uniformity of court fees.
 
 Id.
 

 Hence, we conclude that Blackjack’s reliance on
 
 Camacho
 
 and
 
 Hogoboom
 
 to argue that municipal courts may not collect fees without statutory authority is misplaced.
 

 Finally, we note that in reaching its decision, the district court relied on specific statutory authorization rather than on inherent judicial powers. We will affirm the order of the district court if it reached the correct result, although for different reasons. Rosenstein v. Steele, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987).
 

 Accordingly, we affirm the district court’s order granting the City’s motion to dismiss Blackjack’s ultra vires and unjust enrichment claims. We conclude that Blackjack could prove no set of facts that would entitle it to relief on these claims in light of the municipal court’s inherent authority to charge and collect reasonable bail bond fees.
 

 CONCLUSION
 

 We conclude that the Nevada Constitution and various provisions of Nevada statutes indicate that the municipal courts have the inherent power to charge and collect reasonable fees. Hence, we agree that the Las Vegas Municipal Court legitimately assessed filing fees on bail bonds, and we affirm the district court’s order of dismissal.
 

 Rose, C. J., and Agosti, J., concur.
 

 [1]
 

 NRS 4.060 provides a detailed list of court fees. NRS 4.060(l)(o) provides that each justice of the peace shall charge and collect $40.00 for each bail or property bond filed.
 

 [2]
 

 Blackjack concedes that NRS 5.050 provides municipal courts subject matter jurisdiction over bail and property bonds, but contends that municipal courts lack jurisdiction to collect fees for these bonds.
 

 [3]
 

 Nev. Const. art. 3, § 1, provides:
 

 The powers of the Government of the State of Nevada shall be divided into three separate departments, — the Legislative, — the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution.
 

 [4]
 

 NRS 4.060, which establishes a court fee schedule, and NRS 266.550(2) and NRS 5.073(2), which authorize municipal courts to charge and collect fees, are in addition to the courts’ inherent judicial powers to charge and collect reasonable fees. When the Legislature, by statute, authorizes the exercise of an inherent judicial power, the courts may acquiesce out of comity or courtesy; however, such statutes are merely legislative authorizations of independent rights already belonging to the judiciary.
 
 See
 
 State v. Dist. Ct., 116 Nev. 953, 11 P.3d 1209 (2000) (citing Goldberg v. District Court, 93 Nev. 614, 616, 572 P.2d 521, 522 (1977);
 
 see also
 
 Lindauer v. Allen, 85 Nev. 430, 434, 456 P.2d 851, 854 (1969);
 
 accord
 
 State v. Mitchell, 672 P.2d 1, 9 (Kan. 1983);
 
 accord
 
 Barland v. Eau Claire County, 575 N.W.2d 691, 696 n.8 (Wis. 1998). A statute that attempts to limit or destroy an inherent judicial power is unconstitutional.
 
 See
 
 State v. Dist. Ct., 116 Nev. 953, 11 P.3d 1209 (2000) (citing
 
 Goldberg,
 
 93 Nev. at 616-17, 572 P.2d at 522);
 
 see also
 
 Lindauer v. Allen, 85 Nev. 430, 434, 456 P.2d 851, 854 (1969);
 
 accord Mitchell,
 
 672 P.2d at 9;
 
 accord
 
 State v. Connery, 99 Nev. 342, 345, 661 P.2d 1298, 1300 (1983).