132 Nev., Advance Opinion 22

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| RICHARD A. HUNTER, AN INDIVIDUAL, Appellant, vs. WILLIAM GANG, AN INDIVIDUAL, Respondent. | No. 59691 |
| RICHARD A. HUNTER, AN INDIVIDUAL, Appellant, vs. WILLIAM GANG, AN INDIVIDUAL, Respondent. | No. 63804 |

**FILED**

APR 07 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Consolidated appeals from a final district court order dismissing appellant's complaint with prejudice for want of prosecution and a post-judgment order awarding attorney fees and costs. Eighth Judicial District Court, Clark County; Douglas Smith, Judge.

*Reversed in part, vacated in part, and remanded.*

Greenberg Traurig, LLP, and Mark E. Ferrario and Tami D. Cowden, Las Vegas,
for Appellant.

Marquis Aurbach Coffing and Albert G. Marquis and Tye S. Hanseen, Las Vegas,
for Respondent.

16-90040H

BEFORE GIBBONS, C.J., TAO and SILVER, JJ.

*OPINION*

By the Court, GIBBONS, C.J.:

These are consolidated appeals from a district court order dismissing an action with prejudice for want of prosecution and a post-judgment award of attorney fees and costs. Under the Nevada Rules of Civil Procedure and the court's inherent authority, a district court may dismiss an action for want of prosecution. NRCP 41(e); *Moore v. Cherry*, 90 Nev. 390, 393, 528 P.2d 1018, 1020 (1974). In this opinion, we address whether the district court abused its discretion in dismissing an action with prejudice for want of prosecution before the two-year time period in NRCP 41(e) expired and before the defendant filed an answer or other responsive pleading under NRCP 12. We also consider whether the district court erred in reaching its findings of fact on which it based its conclusions of law and whether the district court abused its discretion in awarding attorney fees and costs.

Our review of the record does not reveal any evidence to support the district court's findings of fact on which it based its conclusions of law and decision to dismiss the action with prejudice. As a result, we conclude that the district court abused its discretion in dismissing the action with prejudice. Accordingly, we reverse the district court's decision to dismiss the action with prejudice, vacate the subsequent order awarding attorney fees and costs, and remand the matter to the district court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

These consolidated appeals arise out of a property dispute between neighbors.[1] In 1980, appellant Richard Hunter acquired his property. To prevent flooding on his property caused by water run-off from an adjoining property, he sought his neighbor's permission to build a berm on her property. According to Hunter, the neighbor agreed, and in 1983, Hunter constructed the berm, which he asserts he continually maintained thereafter.

Around 2002, respondent William Gang acquired the same adjoining property with, according to Hunter, knowledge of the berm's existence. In 2009, Hunter attempted to sell his property, but was purportedly unsuccessful because of concerns raised by the potential buyer with regard to encroachments on Gang's property, including the berm. As a result, a dispute over the berm began, causing Hunter to initiate the lawsuit underlying this appeal.

Hunter's December 4, 2009, verified complaint asserted claims to quiet title and for adverse possession and sought injunctive and declaratory relief regarding the portion of Gang's property where Hunter built the berm. After Hunter filed the complaint, the parties met to discuss a possible settlement. During those negotiations, Hunter granted Gang an open extension of time to respond to the complaint. According to Gang, settlement negotiations then "broke down" in August 2010.

---

[1]We derive the following factual summary from the parties' pleadings, briefs, and arguments before this court and the district court. To the extent that any facts are in dispute, the positions of the parties relative to such facts are set forth herein.

 

Despite this claimed lack of progress in settlement negotiations, Gang asserts that he continued to send settlement correspondence to Hunter through August 2011. Specifically, Gang claims he sent settlement correspondence to Hunter on four separate occasions between September and November 2010. In response to those four inquiries, Gang asserts Hunter's counsel responded once in November 2010, but the response indicated only that Hunter was traveling and that counsel would attempt to obtain an answer from him. Gang claims he did not receive any response thereafter, so he then sent an additional six settlement inquiries to Hunter between December 2010 and August 2011. Gang claims Hunter's counsel did not respond until August 2011, and then only indicated that counsel was on vacation and would not speak to Hunter until the following week. Gang maintains he did not receive any further correspondence from Hunter and, as a result, informed Hunter he would move for dismissal. Hunter disputes Gang's version of events, asserting that the parties were discussing settlement proposals, and Hunter was therefore operating under the impression that the parties would settle the case, up until the time Gang filed his motion to dismiss.

Gang moved to dismiss Hunter's action with prejudice for want of prosecution on August 11, 2011—20 months after Hunter filed his complaint. The two-page motion contained a short statement of facts, claiming settlement negotiations "broke down over a year ago and Hunter became unresponsive for extended periods of time." Gang further asserted that he had attempted frequent contact with Hunter but that Hunter had failed to "resolve the matter or move forward with litigation." Gang did

not file an affidavit or declaration to support his factual contentions.[2] Further, Gang did not identify the specific legal authority under which he sought dismissal. He did, however, cite to cases that identify the court's express authority under NRCP 41(e) to dismiss an action that a plaintiff has not brought to trial within two years, as well as cases discussing the court's inherent authority to dismiss an action for want of prosecution.

Hunter opposed the motion, arguing that dismissal was premature because the two-year time period in NRCP 41(e) had not passed. Alternatively, Hunter argued that if the district court considered entertaining the motion to dismiss, it should excuse any delay because he was having health issues. Specifically, Hunter explained that he had "been suffering from serious medical conditions that interfere[d] with his ability to focus on this litigation" and that his ailments "made it impossible for [him to] pursue th[e] matter until his health improve[d]." Hunter also attached an affidavit from his wife, which stated that since early 2009, Hunter had "been suffering from a series of health related problems, including heart problems, a series of mini strokes that resulted in the temporary loss of eyesight, pneumonia and . . . dangerously high blood pressure."

At the hearing on the motion to dismiss, Gang acknowledged that he was aware of Hunter's ill health[3] but noted that nearly two years

_____

[2]A party who files a pretrial motion involving factual contentions must file an affidavit or declaration with the motion to support those issues. *See* DCR 13(6); EDCR 2.21.

[3]It is unclear when or how Gang first became aware of Hunter's health problems.

had elapsed in the case and argued that Hunter was utilizing the lawsuit as leverage to pressure Gang into selling his property. Specifically, Gang asserted that Hunter wanted a portion of his property because a potential buyer had declined to purchase Hunter's property due to encroachments on Gang's property. Gang also alleged that Hunter had encroached onto another neighbor's property, as well as onto Gang's property again after he filed his complaint. Gang concluded his argument by requesting the district court to dismiss the case, at a minimum, without prejudice.

In response, Hunter argued that two years had not elapsed in the action and that Gang failed to cite a single case that supported a dismissal before two years. Hunter further emphasized his ill health and his counsel indicated that, because of Hunter's ill health, he had found it difficult to discuss the case with Hunter. Hunter explained that the sale with the potential buyer failed because Gang provided inaccurate information to the buyer regarding certain encroachments and asserted that he intended to amend his complaint accordingly. Hunter further questioned why Gang had not pursued any action to remove the alleged encroachments. Finally, Hunter asked the district court to permit the case to proceed and suggested a settlement conference in order to facilitate the process.

The hearing lasted only nine minutes. The district court did not hear witness testimony or receive any evidence to supplement Hunter's verified complaint or his wife's affidavit, or to support Gang's otherwise unsupported assertions. The district court ultimately granted Gang's motion to dismiss with prejudice and directed Gang to prepare the findings of fact and conclusions of law.

 

Upon receiving the proposed order from Gang, Hunter refused to approve it because he claimed it contained unsupported findings of fact and conclusions of law, and essentially granted summary judgment. Nevertheless, Gang submitted the order, which the court signed, despite its lack of citation to legal authority and despite the fact that two years had not elapsed since Hunter filed his complaint. Hunter appealed the dismissal, which is pending before this court in Docket No. 59691.

Thereafter, Gang moved for attorney fees in the district court pursuant to NRS 18.010(2)(b), claiming that Hunter brought his claims without reasonable grounds or to harass, and for costs under NRS 18.020, as the prevailing party. The motion did not contain evidentiary support for Gang's substantive claims that Hunter brought the lawsuit without reasonable grounds or to harass,[4] and the district court did not conduct an evidentiary hearing. Nonetheless, the district court granted Gang's motion for attorney fees and costs in full. Hunter then appealed from that order, which is before us in Docket No. 63804, and the two appeals were subsequently consolidated.

---

[4]Gang supported his motion with his counsel's affidavit, but the affidavit only addressed the reasonableness of the fees under *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 455 P.2d 31 (1969). Although Gang also attached an affidavit of counsel to his reply in support of a fees award, which set forth the dates on which Gang sent settlement correspondence to Hunter between September 2010 and August 2011, Gang provided this information in support of his request for costs and not as evidence that Hunter brought his claims without reasonable grounds or to harass.

## *ANALYSIS*

The basis for the district court's dismissal with prejudice in this case was Hunter's purported failure to prosecute his action with diligence. The district court, however, did not specify the source of its authority when it granted Gang's motion to dismiss. Thus, to aid our analysis, we begin by discussing the applicable authorities under which the district court may dismiss an action for want of prosecution and the parties' arguments in relation to those authorities. After we determine the source of the district court's authority, we address whether the district court's findings of fact and the resulting dismissal of Hunter's action were proper.[5]

### *Dismissal for want of prosecution*

Initially, we must identify the source of the district court's authority in dismissing the action. District courts in Nevada have two independent sources of authority under which they may dismiss an action for want of prosecution. First, district courts have express authority under NRCP 41(e), which permits dismissal whenever the plaintiff has failed to bring the action to trial within two years after the action is filed and requires dismissal if the plaintiff does not bring the action to trial within five years of filing the action. Second, Nevada district courts have inherent authority to dismiss an action for want of prosecution, which is "independent of any authority granted under statutes or court rules." *Moore*, 90 Nev. at 393, 528 P.2d at 1020.

---

[5]Since our decision on these issues is dispositive of this appeal, we do not directly consider Hunter's arguments regarding the award of attorney fees and costs.

 

Because the district court dismissed the underlying action before the two-year time period in NRCP 41(e) had passed, the district court could not have based the dismissal on its express authority.[6] Therefore, the district court must have dismissed Hunter's action under its second source of power, its inherent authority. Although the district court failed to specify that it dismissed the action pursuant to its inherent authority, under the circumstances of this case, inherent authority is the only possible justification for the district court's action.

Contrary to Hunter's argument that NRCP 41(e) limits the district court's inherent authority, the Nevada Supreme Court has held that the district court's inherent authority is not limited in this regard. *See Harris v. Harris*, 65 Nev. 342, 345-50, 196 P.2d 402, 403-06 (1948) (considering the court's inherent authority in light of a statute that was substantially the same as NRCP 41(e) and holding that the district court

---

[6]District courts in the Eighth Judicial District also have express authority to dismiss an action for want of prosecution under local court rules. *See* EDCR 1.90(b)(2), (d)(1) (requiring that each department either dispose of or set for dismissal all civil cases not answered within 180 days of filing or those that have been pending longer than 12 months and in which no action has been taken for more than 6 months); EDCR 2.90(a) (giving the court authority to dismiss any civil action, on its own initiative and without prejudice, that has been pending for more than 12 months and in which no action has been taken for more than 6 months). Gang, however, did not argue that dismissal was proper under these rules, and thus, Gang has waived these arguments. Accordingly, we do not consider them. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

may exercise its inherent authority to dismiss an action for lack of prosecution before the statutory time period for dismissal has passed).

Hunter nevertheless argues that a district court's ability to resort to its inherent authority to dismiss an action for want of prosecution is restricted by *Halverson v. Hardcastle*, 123 Nev. 245, 163 P.3d 428 (2007), which Hunter argues permits a district court to exercise its inherent authority only in limited circumstances, such as when an established method fails or in an emergency situation. *See* 123 Nev. at 263, 163 P.3d at 441. Hunter thus argues that, because NRCP 41(e) provides the district court with an established method for dismissing an action for want of prosecution and because no emergency situation existed, the district court abused its discretion in resorting to its inherent authority and disregarding the time period in NRCP 41(e). Hunter's argument focuses only on *Halverson* and does not account for related caselaw regarding the court's ability to resort to its inherent authority.

In particular, in *City of Sparks v. Sparks Municipal Court*, 129 Nev. ___, ___, 302 P.3d 1118, 1129 (2013), the Nevada Supreme Court reviewed Nevada caselaw discussing inherent authority generally and concluded that a district court need not justify an exercise of inherent authority based on emergency circumstances or the failure of an established method "if [the] action falling under the court's inherent authority is part of the court's day-to-day functioning or regular management of its internal affairs." Rather, the court explained that a district court must justify an exercise of inherent authority only when "the court's need to exercise its inherent authority arises *outside* the court's regular management of its affairs." *Id.* (emphasis added). Thus, we continue our analysis with an overview of the sources of the court's

inherent authority to determine whether the court's resort to its inherent authority in this case required justification before considering whether its use of that authority was an abuse of discretion.

"Inherent judicial powers stem from two sources: the separation of powers doctrine and the power inherent in a court by virtue of its sheer existence." *Id.* at ___, 302 P.3d at 1128 (quoting *Blackjack Bonding v. City of Las Vegas Mun. Court*, 116 Nev. 1213, 1218, 14 P.3d 1275, 1279 (2000)). Under the separation of powers doctrine, the judiciary "has inherent powers to administer its affairs, which include rule-making and other incidental powers reasonable and necessary to carry out the duties required for the administration of justice." *Goldberg v. Eighth Judicial Dist. Court*, 93 Nev. 614, 615-16, 572 P.2d 521, 522 (1977) (citations omitted). It follows, then, that courts may exercise their inherent authority under this doctrine to dismiss an action for want of prosecution "[t]o prevent undue delays and to control their calendars," *Moore*, 90 Nev. at 393, 528 P.2d at 1020, because such prevention and control is necessary for the courts to be able "to carry out the duties required for the administration of justice."[7] *Goldberg*, 93 Nev. at 615-16, 572 P.2d at 522.

---

[7]*See also Moore*, 90 Nev. at 395, 528 P.2d at 1021 (explaining that "'[t]he elimination of delay in the trial of cases and the prompt dispatch of court business are prerequisites to the proper administration of justice. These goals cannot be attained without the exercise by the courts of diligent supervision over their own dockets'" (quoting *Sweeney v. Anderson*, 129 F.2d 756, 758 (10th Cir. 1942))); *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962) (providing that the court's authority "to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control
*continued on next page . . .*

COURT OF APPEALS
OF
NEVADA

(O) 1947B

11

Because the inherent authority to dismiss an action for want of prosecution is incidental to the duties required for the administration of justice and the court's management of its day-to-day activities, no justification is required for the court to resort to this inherent authority. *See Sparks*, 129 Nev. at ___, 302 P.3d at 1129. Accordingly, a district court need not demonstrate that some specific circumstance exists before it may resort to its inherent authority to dismiss an action for want of prosecution. *See generally Renown Reg'l Med. Ctr. v. Second Judicial Dist. Court*, 130 Nev. ___, 335 P.3d 199 (2014) (analyzing the district court's exercise of inherent authority to enter summary judgment sua sponte without delving into whether any of the circumstances set forth in *Halverson* existed). Nevertheless, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

We remind courts that because inherent authority is not regulated by the Legislature or the people, it is more susceptible to misuse, and thus should be exercised sparingly. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993) (warning that inherent power "must be exercised with the greatest restraint and caution, and then only to the extent necessary"). Having concluded that a district court may properly exercise its inherent authority to dismiss an action for

---

*. . . continued*

necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). *Cf.* NRCP 1 (requiring that the rules of civil procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

want of prosecution before the two-year time period in NRCP 41(e) has passed and without having to justify its use, we now turn to whether the district court abused its discretion in dismissing Hunter's action. *See Moore*, 90 Nev. at 393, 528 P.2d at 1020.

### Abuse of discretion

Hunter contends that the district court abused its discretion in dismissing the action because Gang instigated the delay by requesting an extension of time to respond to the complaint and because any continued delay was due to Hunter's ill health. Gang responds that the district court did not abuse its discretion because Hunter failed to diligently pursue his claims after settlement negotiations deteriorated. We discuss the standards for dismissal for want of prosecution in Nevada generally first, before specifically addressing whether the district court abused its discretion in dismissing Hunter's action with prejudice.

This court will not disturb the decision of the district court in dismissing an action for want of prosecution unless the district court grossly abused its discretion. *Moore*, 90 Nev. at 395, 528 P.2d at 1021 (noting the gross abuse of discretion standard of review in a case that was dismissed with prejudice for want of prosecution); *see also Harris*, 65 Nev. at 350, 196 P.2d at 406 (recognizing the same standard of review for dismissal for want of prosecution but not specifying if the dismissal in that case was with or without prejudice). "The element necessary to justify dismissal for failure to prosecute is lack of diligence on the part of the plaintiff, whether individually or through counsel." *Moore*, 90 Nev. at 395, 528 P.2d at 1022.

"The duty rests upon the plaintiff to use diligence and to expedite his case to a final determination." *Id.* at 395, 528 P.2d at 1021 (internal quotation marks omitted). The plaintiff does not satisfy this

duty, however, by merely filing a complaint. *See Raine v. Ennor*, 39 Nev. 365, 372, 158 P. 133, 134 (1916). This is because "'[t]he lack of diligence in prosecuting [a complaint] after it is brought leads to the same consequences as delay in bringing it.'" *Id.* (quoting *Streicher v. Murray*, 92 P. 36, 40 (Mont. 1907)). For example:

> Witnesses die or disappear, or the facts fade from memory. The positions of the parties change, or the subject of the controversy fluctuates in value. The right sought to be enforced becomes doubtful or uncertain, or it becomes impossible for the court to administer equity between the parties with any degree of certainty.

*Id.* (quoting *Streicher*, 92 P. at 40).

Thus, the plaintiff must take action, after filing the complaint, to show that he is diligently prosecuting the case. *See id.* If the plaintiff fails to diligently pursue the case, the court does not abuse its discretion by invoking its inherent authority to dismiss the action. *See id.*; *Moore*, 90 Nev. at 395-96, 528 P.2d at 1021-22. Because the district court dismissed Hunter's complaint with prejudice, however, we expand our discussion to include Nevada caselaw regarding dismissals with prejudice.[8]

With respect to dismissals entered under the court's inherent authority, the Nevada Supreme Court has expressed that a "dismissal

---

[8]We do not address whether a dismissal without prejudice, under the circumstances presented by this case, would have been a proper exercise of the district court's discretion because the parties have not argued this issue and thus have not presented it on appeal. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (providing that an appellate court need not consider claims not cogently argued or supported by relevant authority).

with prejudice is a harsh remedy to be utilized only in extreme situations." *Moore*, 90 Nev. at 393, 528 P.2d at 1021. "It must be weighed against the policy of law favoring the disposition of cases on their merits." *Id.* "Because dismissal with prejudice is the most severe sanction that a court may apply . . . its use must be tempered by a *careful* exercise of judicial discretion." *Id.* at 394, 528 P.2d at 1021 (alteration in original) (internal quotation marks omitted). While a dismissal under NRCP 41(e) is presumed to be with prejudice, *see Brent G. Theobald Constr., Inc. v. Richardson Constr., Inc.*, 122 Nev. 1163, 1167, 147 P.3d 238, 241 (2006), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008), the district court has discretion to dismiss the action with or without prejudice, *see Home Sav. Ass'n v. Aetna Cas. & Sur. Co.*, 109 Nev. 558, 563, 854 P.2d 851, 854 (1993). "Because the law favors trial on the merits, however, dismissal with prejudice may not be warranted where such delay is justified by the circumstances of the case." *Home Sav. Ass'n*, 109 Nev. at 563, 854 P.2d at 854. Thus, cases that have analyzed a district court's authority to dismiss an action with prejudice, under either its express or inherent authority, suggest that the district court must take into account additional considerations, other than the lack of diligence.

The Nevada Supreme Court has not identified what circumstances justify dismissal with prejudice when the district court acts under its inherent authority, but it has identified several factors that the district court should consider when contemplating whether to dismiss an action with prejudice under the five-year provision of NRCP 41(e). Those factors include (1) "the underlying conduct of the parties," (2) "whether the plaintiff offers adequate excuse for the delay," (3) "whether the plaintiff's

case lacks merit," and (4) "whether any subsequent action following dismissal would not be barred by the applicable statute of limitations." *Monroe v. Columbia Sunrise Hosp. & Med. Ctr.*, 123 Nev. 96, 103, 158 P.3d 1008, 1012 (2007); *see also Home Sav. Ass'n*, 109 Nev. at 564, 854 P.2d at 854 (holding that district courts should consider the conduct of the parties, whether the underlying action has merit, and whether there was an adequate excuse for the delay in deciding whether to dismiss an action with prejudice under NRCP 41(e)'s mandatory dismissal provision).

We adopt these same factors here, as we find these cases instructive, especially in light of the fact that dismissals under NRCP 41(e) are permitted for the same reason that the court may dismiss an action under its inherent authority—for lack of diligence in the prosecution of an action. *See* NRCP 41(e) (allowing dismissal "for want of prosecution"); *Moore*, 90 Nev. at 393, 528 P.2d at 1020 ("Inherent in courts is the power to dismiss a case for failure to prosecute . . . ."); *cf. Volpert v. Papagna*, 85 Nev. 437, 440, 456 P.2d 848, 850 (1969) (utilizing caselaw regarding a dismissal for want of prosecution under the court's inherent authority as guidance to determine whether the district court abused its discretion in dismissing a case for want of prosecution under NRCP 41(e)).

Thus, in determining whether to dismiss an action with prejudice for want of prosecution under its inherent authority, the district court should consider the factors set forth above and any other relevant factors that may be pertinent to the court's consideration, such as the length and reasonableness of the delay. *See Monroe*, 123 Nev. at 103, 158 P.3d at 1012; *Home Sav. Ass'n*, 109 Nev. at 564, 854 P.2d at 854. We emphasize that not all of the factors may be pertinent to every decision to dismiss an action for want of prosecution entered under the court's

inherent authority, and thus, each determination will require a case-by-case examination of appropriate factors. *See Monroe*, 123 Nev. at 103-04, 158 P.3d at 1012-13 (only considering the statute of limitations factor and concluding that the district court did not abuse its discretion in dismissing the complaint with prejudice because the statute of limitations on appellant's claims had already run when the order was entered, such that appellant could not file a new complaint even if the district court had dismissed the previous one without prejudice).

Therefore, in considering whether to uphold a dismissal with prejudice by a district court entered pursuant to its inherent authority, we consider the same factors that are pertinent to the district court's exercise of discretion to dismiss an action with prejudice under NRCP 41(e) and an appellate court's subsequent review of that decision. Thus, we now consider the parties' underlying conduct, whether Hunter offered an adequate excuse for the delay, whether Hunter's claims lacked merit, and whether the statutes of limitation would have barred any subsequent action. *See id.* at 103, 158 P.3d at 1012. Because evaluating these factors requires us to review the district court's findings of fact and conclusions of law, we must first address Hunter's arguments regarding the propriety of those findings and conclusions. Thereafter, we return to our discussion of the *Monroe* factors.

### The findings and conclusions in the order

Hunter argues that there is no evidence in the record to support the majority of the district court's findings of fact and conclusions of law based on those findings. This court defers to the district court's findings of fact and will not disturb them unless they are clearly erroneous or not supported by substantial evidence. *See Weddell v. H2O, Inc.*, 128 Nev. 94, 101, 271 P.3d 743, 748 (2012). "Substantial evidence is evidence

that a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Whitemaine v. Aniskovich*, 124 Nev. 302, 308, 183 P.3d 137, 141 (2008)). Counsel's arguments are not evidence establishing the facts of the case. *See Nev. Ass'n Servs. v. Eighth Judicial Dist. Court*, 130 Nev. ___, ___, 338 P.3d 1250, 1255 (2014). This court reviews the district court's legal conclusions de novo. *See Weddell*, 128 Nev. at 101, 271 P.3d at 748.

When the district court entered its order containing detailed findings of fact and conclusions of law, the only evidence it had received consisted of Hunter's verified complaint, *see Vaile v. Eighth Judicial Dist. Court*, 118 Nev. 262, 272, 44 P.3d 506, 513 (2002) (providing that a verified complaint is evidence), addressing only the berm, and Hunter's wife's affidavit, addressing only Hunter's health issues.[9] The district court, however, found that Hunter filed his complaint as leverage to pressure Gang into selling his property, that settlement negotiations broke down one year prior to when Gang filed his motion to dismiss, that Hunter had been unresponsive throughout the following year, that Hunter had staged a construction project on Gang's property during the pendency of the lawsuit, that Hunter's encroachments encompassed an area of 200 feet by 40 feet and included landscaping in addition to the berm, and that Hunter had previously encroached on Forest Service property—facts that neither Gang nor Hunter presented any evidence to support.

Thus, having reviewed the record, we conclude that the evidence presented to the district court does not support nearly all of the

---

[9]At the hearing on the motion to dismiss, neither party offered the court any additional evidence.

court's factual findings, and no evidence was presented to sustain its conclusions that Hunter failed to timely prosecute his case and that Hunter's claims lacked merit. We now return to the discussion of the *Monroe* factors to determine whether the district court abused its discretion by dismissing Hunter's action with prejudice for want of prosecution.[10] *See Monroe*, 123 Nev. at 103, 158 P.3d at 1012.

*The underlying conduct of the parties*

We review the conduct of the parties without deference to the district court's findings because, as discussed above, its findings are unsupported by any evidence. *See Weddell*, 128 Nev. at 101, 271 P.3d at 748. Instead, we look to the record to determine whether the underlying conduct of the parties weighs in favor of dismissal with prejudice. In considering the conduct of the parties, we consider whether the parties behaved in accordance with a reasonable and good-faith belief that no court action was necessary. *See Home Sav. Ass'n*, 109 Nev. at 564, 854 P.2d at 854.

Here, the parties entered into settlement negotiations after Hunter filed his complaint, and then Hunter granted Gang an extension of time to file an answer while the parties discussed settlement. Thus, during the time the parties discussed settlement, it seems reasonable that Hunter would not continue to pursue litigation, such as by withdrawing the open extension previously granted or by seeking default. *See id.*

---

[10]We note at the outset that while the district court did not have the benefit of this opinion when entering its dismissal order, because the district court's order touched upon the facts that are pertinent to the decision of whether to dismiss with prejudice, the record shows that the district court may have considered them, even if not purposefully.

(concluding the appellant's inaction was reasonable because it believed its subsidiary corporation was actively asserting its interest in the district court).

The parties dispute whether settlement negotiations effectively concluded as a result of inaction or a lack of progress. Gang argues that settlement negotiations deteriorated in August 2010, and Hunter claims the parties continued to discuss settlement until Gang filed his motion to dismiss. Neither party presented any evidence to the district court to support their position before the district court entered its order of dismissal. Both parties' behavior, however, suggests that settlement negotiations were ongoing.

First, Hunter did not seek default or demand Gang to file an answer. Second, Gang continued to send settlement correspondence to Hunter after Gang claimed settlement negotiations had deteriorated and did not seek to further the case by filing an answer.[11] If settlement negotiations had deteriorated, Gang's sedentary approach is confusing, considering Gang requested, and Hunter granted, an extension of time to respond to the complaint only while the parties engaged in settlement negotiations, and the alleged encroachment would remain on Gang's property until he obtained affirmative court relief. *See id.* (concluding that the parties' conduct weighed in favor of reversing the dismissal with

---

[11]We note that Hunter does not dispute that he had granted Gang an open-ended extension of time to file the answer. Thus, in the absence of any effort by Hunter to fix a time for Gang to file an answer, the law did not require Gang to take any action. *See Thran v. First Judicial Dist. Court*, 79 Nev. 176, 181, 380 P.2d 297, 300 (1963) ("The defendant is required only to meet the plaintiff step by step as the latter proceeds.").

prejudice where the appellant's delay in proceeding with litigation was justifiable during respondent's appeal of another district court ruling because that appeal would determine the parties' rights). Therefore, because the parties' behavior in failing to take court action suggests that both parties believed settlement remained possible, we conclude this factor supports a determination that dismissal with prejudice was an abuse of discretion.

*The adequacy of the excuse*

The district court found that Hunter failed to provide an adequate excuse for his lack of diligence. This court will defer to the district court's finding unless it is clearly erroneous or not supported by substantial evidence. *See Weddell*, 128 Nev. at 101, 271 P.3d at 748. Hunter argues that a series of medical conditions, including heart problems, mini-strokes, loss of eyesight, pneumonia, and high blood pressure interfered with his ability to focus on the litigation and that the district court should have considered this an adequate excuse for the delay in prosecuting his action. Gang argued that this was not an adequate excuse to justify the one-year delay.

As evidence, Hunter presented his wife's affidavit to the district court, which attested to Hunter's illness and its effect on Hunter's ability to focus on the litigation. Hunter's wife's affidavit, however, stated that Hunter had been suffering from ill health since early 2009, months before the litigation began. Neither Hunter nor his wife's affidavit indicated when his ailments began to interfere with his ability to focus on the litigation or when they would resolve to allow him to continue to pursue litigation. Therefore, even in light of Hunter's substantiated claim that his ill health caused the delay, we conclude sufficient evidence

supports the district court's finding that Hunter's ill health was inadequate to excuse a 20-month period in which he failed to take any court action. *See Moore*, 90 Nev. at 395, 528 P.2d at 1021.

Moreover, even if adequate, Hunter's illness excuse would not necessarily extend to his attorney, who could have contacted opposing counsel, and if necessary, filed for default under NRCP 55 or taken other legal action. *See id.* at 395, 528 P.2d at 1022 (providing that counsel's lack of diligence is sufficient to justify dismissal for want of prosecution); *cf. Walls v. Brewster*, 112 Nev. 175, 178-79, 912 P.2d 261, 263 (1996) (recognizing that while an attorney's illness may be the basis for a claim of excusable neglect in failing to file an opposition, such excuse does not extend to cocounsel who could have filed the opposition).

On appeal, Hunter first relies on *Jarva v. United States*, 280 F.2d 892, 894-95 (9th Cir. 1960), to argue that a plaintiff's illness is sufficient to justify a delay in prosecution. The facts in *Jarva*, however, are distinguishable from the facts of this case. There, the United States Court of Appeals for the Ninth Circuit vacated an order of dismissal for lack of prosecution where the plaintiff's four-month hospitalization caused him to fail to file a certificate of readiness for trial in accordance with court practice. *Id.* In vacating the order, the Ninth Circuit explained that "during the time [the plaintiff] was hospitalized, it would seem grossly unfair to force him to trial during such a period unless the [defendant] was suffering some unusual prejudice at the time." *Id.*

Unlike the plaintiff in *Jarva*, who was hospitalized just before trial, Hunter began experiencing health problems in early 2009, months before he initiated his lawsuit. Further, the plaintiff's hospitalization in *Jarva* only prolonged the proceedings temporarily. *Id.* Here, the record

gave no indication of when, if ever, Hunter would be healthy enough to continue litigation. In his opposition to Gang's motion to dismiss, Hunter merely indicated that his ailments "made it impossible for [him to] pursue this matter *until his health improves*." (Emphasis added.) Therefore, when we compare the timing and duration of the plaintiff's illness in *Jarva* with that of Hunter's, we conclude *Jarva* is sufficiently distinguishable, and thus does not guide our decision in the present case.[12]

We emphasize that we do not hold today that a plaintiff's prolonged illness is never an adequate excuse for a delay in prosecution, as the Nevada Supreme Court has previously found the illness of both a plaintiff and his wife to be adequate. *See In re McGregor*, 56 Nev. 407, 411, 48 P.2d 418, 420 (1935) (recognizing the plaintiff's illness and the prolonged sickness of his wife as adequate to excuse a delay in the proceedings based on information contained in the plaintiff's affidavit).

---

[12]Similarly, we find Hunter's reliance on *Hevner v. Village East Towers, Inc.*, 293 F. App'x 56 (2d Cir. 2008), to argue that this court should vacate the district court's order if the district court failed to consider the plaintiff's disability helpful, but not determinative. There, the United States Court of Appeals for the Second Circuit concluded that because appellant's disability impaired her performance of many routine tasks, and because she was not represented by counsel, her delays did not warrant a dismissal of her complaint. *Id.* at 58. While this decision may serve as persuasive authority regarding whether Hunter's illness was an adequate excuse for the delay, it is not dispositive of the issues before this court.

Under the circumstances here, however, Hunter made an insufficient showing that the delay was excusable due to his illness.[13] Therefore, this factor suggests that dismissal with prejudice was not an abuse of discretion.

*The merit of the claims*

While a district court may "consider the merits of the action in exercising its discretion" to dismiss an action for want of prosecution, *Volpert*, 85 Nev. at 441, 456 P.2d at 850 (internal quotation marks omitted), the district court's order here does not indicate a basis for its conclusion that "Hunter's claims for quiet title, injunctive relief, adverse possession, and declaratory relief to attempt to obtain title to the

---

[13]A party seeking relief from a delay in prosecution due to ill health or a medical condition should normally support its position by providing medical evidence proving hospitalization or disability to the court. *See Davis v. Operation Amigo, Inc.*, 378 F.2d 101, 103 (10th Cir. 1967) (noting that in filing a motion for continuance because of plaintiff's illness, counsel attached a doctor's letter stating that plaintiff "had been under the doctor's care since March 19 suffering from virus pneumonitis, was responding slowly to treatment and could not leave the area for the next seven to ten days," and concluding that dismissal was too harsh of a sanction based, in part, on that fact). Additionally, if the party alerts the court and the opposing party of a medical condition that results in delay, the party should keep the court and the opposing party apprised of the progress of the resolution of the medical condition. *See Smith v. Gold Dust Casino*, 526 F.3d 402, 403, 405 (8th Cir. 2008) (noting that in requesting a discovery extension, the plaintiff explained he was experiencing health problems related to, among other things, cardiac artery disease and continued to apprise the court of his health progress by informing it he would undergo heart surgery, and reversing the dismissal of the case, in part, on that basis).

COURT OF APPEALS
OF
NEVADA

(O) 1947B

Encroachment lack merit." We review these legal conclusions de novo. *See Weddell*, 128 Nev. at 101, 271 P.3d at 748.

It appears that the district court based its conclusion that Hunter's claims lacked merit on Gang's unsupported allegations of Hunter using the lawsuit as leverage to pressure him into selling his property and attempting "to amass property that is beyond his own boundaries." Indeed, at the hearing, the court said, "[w]ell, I just think there's more to it than he's sitting on his rights right now. I don't think he has a position and he's just filed a suit in hopes that something sticks if he throws it against the wall." But, as discussed above, the only evidence presented to the district court consisted of Hunter's verified complaint, *see Vaile*, 118 Nev. at 272, 44 P.3d at 513, and Hunter's wife's affidavit, neither of which contained information that could be viewed as substantial evidence supporting the district court's findings in this regard. *See Weddell*, 128 Nev. at 101, 271 P.3d at 748. Accordingly, this would be an improper basis for the court's conclusion that Hunter's claims lacked merit.

On appeal, Gang argues that this court should affirm the district court's dismissal with prejudice because Hunter failed to pay or even plead the payment of property taxes on the property, which he argues is dispositive of the adverse possession claim. Hunter responds that the dismissal cannot be justified on the basis of a pleading deficiency because Gang did not move to dismiss under NRCP 12(b)(5). He further contends that the silence in the record regarding the payment of taxes does not warrant an assumption that he did not pay or tender property taxes and thus permit the conclusion that his claims lack merit on this

basis. Even assuming Gang is correct and Hunter's failure to plead the payment of property taxes in accordance with NRS 40.090(1)[14] is dispositive of his adverse possession claim and the related quiet title claim,[15] that deficiency would not dispose of Hunter's claims for injunctive and declaratory relief based on the theories of an implied or prescriptive easement, irrevocable license, or an agreed boundary by acquiescence because the payment of taxes is not an element of those claims.[16]

---

[14]NRS 40.090(1) specifically requires the party bringing an adverse possession action to assert in a verified complaint that he personally, or his predecessor in interest, has "paid all taxes of every kind levied or assessed and due against the property during the period of 5 years next preceding the filing of the complaint." *See also Potts v. Vokits*, 101 Nev. 90, 93, 692 P.2d 1304, 1306 (1985) ("[T]he payment of taxes is an absolute requirement for claiming land through adverse possession.").

[15]*See Chapman v. Deutsche Bank Nat'l Tr. Co.*, 129 Nev. ___, ___, 302 P.3d 1103, 1106 (2013) (providing that "[a] plea to quiet title does not require any particular elements, but 'each party must plead and prove his or her own claim to the property in question' and a 'plaintiff's right to relief therefore depends on superiority of title'" (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992))).

[16]Further, given the procedural posture at the time, Hunter could have sought leave to amend his complaint. *See* NRCP 15(a) (providing that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires"). *See also Nutton v. Sunset Station, Inc.*, 131 Nev. ___, ___, 357 P.3d 966, 976 (Ct. App. 2015) (holding that the district court prematurely concluded that plaintiff's proposed amendment would be futile under NRCP 56 before a sufficient legal basis existed to warrant such a conclusion).

Therefore, this factor suggests the dismissal with prejudice was an abuse of discretion.[17]

*Statutes of limitation*

Because neither the record nor the parties' briefs include any information regarding the statutes of limitation applicable to Hunter's claims, we decline to attempt to assess whether the applicable statutes of limitation would have precluded a subsequent action following dismissal, and thus whether a dismissal with prejudice would have been appropriate on that basis. *See Monroe*, 123 Nev. at 103-04, 158 P.3d at 1013.

Accordingly, because we conclude the conduct of the parties and the merits of the action weigh against dismissal with prejudice, we conclude the district court abused its discretion in dismissing Hunter's action with prejudice. *See id.* at 102-03, 158 P.3d at 1012; *Home Sav. Ass'n*, 109 Nev. at 565, 854 P.2d at 854 (providing that "a district court should be more reluctant to dismiss with prejudice when the underlying action is meritorious"). In cases where the Nevada Supreme Court has

---

[17]We also clarify that, contrary to Gang's assertion during appellate oral argument, not all dismissals for want of prosecution operate as an adjudication on the merits and thus a bar to a second suit against the same defendant on the same claim. NRCP 41(e) states, in pertinent part: "A dismissal under this subdivision (e) is a bar to another action upon the same claim for relief against the same defendants *unless the court otherwise provides*." (Emphasis added.) Accordingly, "the district court has discretion under NRCP 41(e) to dismiss with or without prejudice." *Home Sav. Ass'n*, 109 Nev. at 563, 854 P.2d at 854. And, "unless the district court states in its order that dismissal is without prejudice, dismissal with prejudice is presumed and is res judicata and bars any other suit on the same claim." *Theobald Constr.*, 122 Nev. at 1167, 147 P.3d at 241 (internal footnotes and quotation marks omitted).

Court of Appeals
of
Nevada

(O) 1947B

affirmed the district court's dismissal of an action with prejudice prior to the NRCP 41(e) two-year period, such dismissal came after the plaintiff's failure to comply with a deadline or appear for trial. *See Walls*, 112 Nev. at 178-79, 912 P.2d at 262-63 (holding that dismissal with prejudice for want of prosecution before two years had passed was appropriate where plaintiff failed to complete arbitration within one year, as required by NAR 12(B), and failed to oppose defendant's motion to dismiss after receiving two extensions); *Moore*, 90 Nev. at 394-97, 528 P.2d at 1021-23 (affirming a dismissal with prejudice for lack of prosecution before two years had passed where plaintiffs and their attorneys, being aware of the date and place of the trial, failed to appear for trial or request a continuance). Neither situation, however, was the case here, nor was the situation even similar to those two cases.

## CONCLUSION

In light of the foregoing, we conclude that the majority of the district court's findings of fact, on which it based its conclusions of law and decision to dismiss the action with prejudice, are unsupported by any evidence in the record. We further determine that the evidence that was presented does not support a finding that dismissal with prejudice was warranted. Accordingly, we conclude the district court abused its discretion[18] in dismissing Hunter's action with prejudice. Therefore, we reverse the district court's decision to dismiss the action with prejudice, vacate the order of attorney fees and costs based on that dismissal, and

---

[18]As defined in *Moore*, 90 Nev. at 395, 528 P.2d at 1021.

remand the matter to the district court for further proceedings consistent with this opinion.[19]

_____, C.J.
Gibbons

_____, J.
Tao

_____, J.
Silver

---

[19]We further deny each party's request for attorney fees on appeal, *see* NRAP 38(b) (allowing attorney fees to be awarded on appeal in certain circumstances), and Hunter's motion to strike Gang's notices of supplemental authorities.

COURT OF APPEALS
OF
NEVADA

(O) 1947B